UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| CAREY V. BROWN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 1:20-CV-00164-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| MERRICK GARLAND[1], Attorney General of the United States of America, and REGINA LOMBARDO, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Merrick Garland, in his official capacity as Attorney General of the United States, and Regina Lombardo, in her official capacity as the Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, filed a Motion to Dismiss [Doc. 10] and memorandum in support [Doc. 11] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Carey Brown responded in opposition [Doc. 17] and Defendants replied [Doc. 23]. This motion is now ripe for resolution.

**I.     BACKGROUND**

Plaintiff operated MyCashNow.com and made loans to individuals in New York with an

---

[1] Plaintiff initially sued former Attorney General William P. Barr in his official capacity. Merrick Garland is his successor and is automatically substituted in former-Attorney General Barr's place. Fed.R.Civ.P. 25(d) provides that "An action does not abate when a public officer who is a party in an official capacity … ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name…."

1

annual percentage rate of over twenty-five percent per annum [Doc. 1, ¶ 13-15]. In New York, it is a crime for an unlicensed lender to charge more than twenty-five percent per annum on any loan, pursuant to N.Y. Penal Law § 190.42 [*Id*. at ¶ 16]. Plaintiff pled guilty to one count of criminal usury in the first degree in the state of New York, which is a class C felony and punishable by up to fifteen years in prison [*Id*. at ¶¶ 16-17].

Plaintiff contends his felony usury conviction does not prohibit him from possessing firearms under 18 U.S.C. § 921(a)(20)(A), which excludes certain felonies from being considered a "crime punishable by imprisonment for a term exceeding one year." He seeks declaratory and injunctive relief [*Id*. at ¶ 34].[2] Defendants argue Plaintiff's complaint should be dismissed because his usury conviction is not the type of offense that falls within the § 921(a)(20)(A) exception and he is, accordingly, prohibited from possessing any firearms under § 922(d)(1) and (g)(1) [Docs. 10, 11].

## II. STANDARD OF REVIEW

Under Fed.R.Civ.P. 12(b)(6), the Court may dismiss an action for failing to state a claim upon which relief can be granted. Fed.R.Civ.P. 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). However, the plaintiff must allege

---

[2] Alternatively, Plaintiff raises two constitutional challenges to the enforcement of § 922(g) against him because of his New York conviction. First, if his conviction is not an exempted felony conviction under § 921(a)(20)(A), then §§ 922(g)(1) and (d)(1) create unconstitutional distinctions between classes of individuals, in violation of the Fifth Amendment's Due Process clause [Doc. 1, ¶¶ 36, 40]. Second, Plaintiff alleges that §§ 922(g)(1) and (d)(1) violate his Second Amendment "right to keep and bear arms" [*Id*. at ¶ 44].

2

facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## III. ANALYSIS

Federal law prohibits any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing firearms or ammunition. 18 U.S.C. § 922(g)(1). Certain felony convictions, however, do not trigger this prohibition on firearm possession. *See* 18 U.S.C. § 921(a)(20)(A). Those felonies include "any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." *Id.* The issue in this case is whether a conviction for criminal usury in the first degree under New York Penal Law § 190.42 is the type of offense that falls within the exclusion provided by § 921(a)(20)(A) and not trigger the prohibition on firearm possession.

To answer this question, the Court begins with the text of 18 U.S.C. § 921(a)(20)(A). It enumerates four types of offenses that do not trigger the prohibition on possessing firearms: (1) antitrust violations, (2) unfair trade practices, (3) restraints of trade, and (4) other similar offenses relating to the regulation of business practices ("the business practices clause"). While none of these are specifically defined, they all share a common characteristic of adversely effecting competitors or consumers. *See United States v. Meldish*, 722 F.2d 26, 27-28 (2d Cir. 1983).

As Defendants argue, courts that have addressed the scope of § 921(a)(20)(A) have looked to the underlying elements of the predicate offense to determine whether it has an adverse effect on competition or consumers. In *Meldish*, the Second Circuit analyzed a conviction for importing merchandise into the United States by using false custom declarations. It found the conviction

3

was not an unfair trade practice because it "in no way depends upon whether it has an effect on competition or consumers." *Id.* at 28. Its focus was only on the elements of the predicate offense to determine whether that offense had an anti-competitive effect. *Id.* The Fifth Circuit also required an effect on competition or consumers. *See Dreher v. United States*, 115 F.3d 330, 332-33 (5th Cir. 1997). In *Dreher*, the Court analyzed a conviction for mail fraud and found it did not qualify "[b]ecause [such] violations … in no way depend on whether they have an effect upon competition." *Id.* In *United States v. Schultz*, 586 F.3d 526, 530 (7th Cir. 2009), the Seventh Circuit held that "to determine whether Schultz's previous conviction is excluded under the § 921(a)(20)(A) exclusion, we focus on the elements of the predicate conviction."

Similarly, the Eight Circuit also found that "implicit in the term 'unfair trade practices' is the requirement of an adverse economic effect on competition or consumers." *United States v. Stanko*, 491 F.3d 408, 415-16 (8th Cir. 2007). But in analyzing the reach of § 921(a)(20)(A), the Court did not exclusively focus on the elements of the predicate offense. Instead, it examined both "the purpose and elements of the statute of conviction." *Id.* at 415. It found that the primary purpose of the underlying offense was "to protect public health" and not to protect competition or consumers. *Id.* at 417. It also examined the elements of the underlying offense to determine whether it had "an economic effect on competition or consumers." *Id.* at 418. It did not. Therefore, the offense was not an excluded felony under § 921(a)(20)(A).

The Government argues that the Court should only examine the elements of the underlying predicate offense to determine whether it adversely effects competition or consumers.[3] If the underlying offense does not have as an element a requirement of proof of an adverse effect, then it does not fit the exception. The Court declines to limit its analysis to only the elements of the

---

[3] The Sixth Circuit has not addressed this issue.

predicate offense. The better approach, as employed by the Court in *Stanko*, is to include both the primary purpose of the statute at issue and its elements in determining whether the offense fits within § 921(a)(20(A). The reason is because both the statute's primary purpose and its elements provide insight into whether the predicate offense fits within § 921(a)(20)(A). As the district court noted in *Reyes*, "[t]he common thread between the enumerated offenses is that they are commercial crimes intended to address economic harm to competitors or consumers – not that they require proof of such harm as an element of the offense." *Reyes v. Sessions,* 342 F. Supp. 3d 141, 147 (D.C. Dist. 2018). "The fact that a business practices offense does not have as an element proof of harm to consumers or competition…cannot definitively determine that it is not within the business practices exception in § 921(a)(20)(A)." *Id.* at 150-51. Moreover, relying solely on the elements of the predicate offense would require "a predicate offense to pass a test that the enumerated offenses themselves do not meet." *Id*. at 151.[4] That inconsistency simply does not support restricting the analysis to only the elements. Both the primary purpose and its elements should be examined.

The Court begins with the elements of the predicate offense, criminal usury in the first degree under New York Penal law § 190.42. "A finding of criminal usury requires proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance." *Pearl Cap. Rivis Ventures, LLC v. RDN Const., Inc*., 54 Misc. 3d 470, 473, 41 N.Y.S.3d 397, 400 (N.Y. Sup. Ct. 2016) (citations and quotations omitted). Under New York Penal Law § 190.42, a person commits criminal usury in the first degree when he commits criminal usury but also has either a previous conviction for criminal usury or an attempt or his conduct "was

---

[4] For example, "[m]ost criminal antitrust violations…are considered to be per se harmful to competition and consumers and require no actual proof of injury." *Reyes*, 342 F. Supp. 3d at 150 (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 (1940)).

part of a scheme or business of making or collecting usurious loans." *People v. Valentzas*, 517 N.E.2d 198, 199 (N.Y. 1987). What is notably absent from the elements is any adverse impact on the consumer. The elements do not address it. It is certainly implied but does not require any affirmative proof. Instead, the offense only requires proof of knowledge, the interest rate exceeding 25%, and a loan or forbearance. To be sure, usurious loans can be harmful to the borrower, but proving that harm is not an element of the offense under New York law. The Court agrees with the Government that criminal usury conviction does not meet the elements test.

That leads to the next issue, the law's primary purpose. In *Reyes*, the district court analyzed convictions for securities fraud and making false filings with the Securities and Exchange Commission in violation of 15 U.S.C. §§ 78j(b) and 78(ff), falsifying corporate books and records, and making false statements to auditors. It noted the purpose of the Exchange Act "as a whole [was] to regulate business practices in order to protect investors—i.e., purchasers of securities in the securities market—from economic harm." *Reyes*, 342 F. Supp. 3d at 153–54. It found that each of Reyes's convictions satisfied this primary purpose prong and was excluded from the definition of "crime[s] punishable by imprisonment for a term exceeding one year." *Id*. at 156.

The purpose of criminal usury laws is quite similar to the purpose of the Exchange Act: protecting borrowers in the case of usury laws, investors in the case of the Exchange Act. *Id.* The Second Circuit recently addressed the purpose behind criminal usury laws.

> The purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation. Law-making authorities in almost all civilizations have recognized that the crush of financial burdens causes people to agree to almost any conditions of the lender and to consent to even the most improvident loans. Lenders, with the money, have all the leverage; borrowers, in dire need of money, have none. ... [New York law] protect[s] impoverished debtors from improvident transactions drawn by lenders and brought on by dire personal financial stress.

6

*United States v. Moseley*, 980 F.3d 9, 21 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1442 (2021) (quoting *Schneider v. Phelps*, 41 N.Y.2d 238, 243, 391 N.Y.S.2d 568, 359 N.E.2d 1361 (1977)). The criminal usury statute protects consumers by prohibiting unauthorized lenders from charging an interest rate on loans at a level the New York legislature has determined to be criminal.[5] Its purpose is to protect consumers by regulating a specific business practice of certain lenders. As such, its primary purpose is consistent with the types of crimes Congress intended to include within the definition of § 921(a)(20)(A).

Accordingly, given the primary purpose of the law is to protect consumers, the Court finds Plaintiff's predicate conviction for criminal usury in the first degree is excluded from the definition of a "crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 921(a)(20)(A). Given this ruling, the Court finds it unnecessary to address Plaintiff's Second Amendment argument and Fifth Amendment Due Process challenge.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [Doc. 10] is **DENIED**.

SO ORDERED:

s/ Clifton L. Corker<br>
United States District Judge

---

[5] Indeed, loans charging criminal usury interest are not even enforceable in New York. *See Blue Wolf Cap. Fund II, L.P. v. Am. Stevedoring Inc.*, 105 A.D.3d 178, 184, 961 N.Y.S.2d 86, 90 (2013) ("Since ASI has successfully asserted criminal usury as an affirmative defense, the loan transaction and the associated note, loan agreement, and collateral agreement are void and unenforceable).

7

Case 1:20-cv-00164-DCLC-SKL   Document 24   Filed 05/14/21   Page 7 of 7   PageID #: 187